*E-filed 2/28/07*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROSANA J. GIORDANO, | No. C05-04035 HRL |
| Plaintiff, | **ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| LINDA S. McMAHON, Acting Commissioner of Social Security, | |
| | **[Re: Docket Nos. 13, 16]** |
| Defendant. | |

In this Social Security action, plaintiff Rosana J. Giordano appeals a final decision by the Commissioner denying her application for disability insurance benefits. Presently before the court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff filed a reply brief, and the matter was submitted without oral argument. Having considered the papers submitted by the parties, and for the reasons set forth below, the court denies plaintiff's motion and grants defendant's motion.

## I. BACKGROUND

Plaintiff is a 38-year-old woman with a 12th grade education and a history of back problems. (AR 36.) Her medical situation is complicated by obesity, depression, memory problems, and side effects from medication. (AR 49, 50, 56.) Plaintiff's main work experience

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

United States District Court
For the Northern District of California

has been as a bank teller. (AR 84.) Plaintiff underwent a lumbar diskectomy in 2000 and experienced sporadically increasing back pain until she stopped working in September 2002 due to the pain. (AR 37.) Her back pain has been treated with medicine and physical therapy, but a contemplated lumbar fusion procedure has not been performed because plaintiff has not managed to lose the weight necessary to allow the surgery. (AR 47-50.)

Plaintiff applied for disability insurance benefits in February 2003, contending that she was disabled due to a herniated disc, bone spur, and degenerative disc disorder with detachment and scar tissue beginning September 18, 2002. (AR 83.) The claim was initially denied on May 13, 2003. (AR 61.) Plaintiff filed a request for reconsideration, adding a claim of mental disability, but the claim was denied at the reconsideration level on August 12, 2003. (AR 65-69.) Plaintiff appeared for a hearing before an Administrative Law Judge (ALJ) on March 4, 2004, represented by counsel. The ALJ issued his order finding plaintiff not disabled on April 4, 2004. (AR 15-24.) He found that plaintiff's degenerative disc disease was a "severe" impairment under 20 C.F.R. § 404.1520(c). (AR 24.) However, he concluded that this impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (AR 24.) The ALJ further found that plaintiff has the residual functional capacity ("RFC") to perform at least a significant range of light work activity, and that plaintiff's impairment does not prevent her from performing her past relevant work. (AR 24.) On February 15, 2005, the Appeals Council denied plaintiff's request for review, despite her submission of additional evidence concerning her alleged mental disorders, and the ALJ's decision became the final decision of the Commissioner. (AR 8-11.) Plaintiff now seeks judicial review of that decision.

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term

1  "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is
2  such relevant evidence that a reasonable mind might accept as adequate to support the
3  conclusion." *Moncada*, 60 F.3d at 523.  When determining whether substantial evidence exists
4  to support the Commissioner's decision, the court examines the administrative record as a
5  whole, considering adverse as well as supporting evidence. *Drouin v. Sullivan*, 966 F.2d 1255,
6  1257 (9th Cir. 1992).  The Commissioner's decision must be affirmed if the record can
7  reasonably support either affirming or reversing the decision.  *Moncada*, 60 F.3d at 523.

### III.  DISCUSSION

Plaintiff contends that the ALJ erred in (1) rejecting the opinion of plaintiff's treating physician; (2) concluding that plaintiff's alleged mental impairment was not severe; (3) determining that plaintiff is capable of returning to her past work; and (4) discounting plaintiff's subjective testimony pursuant to a finding that plaintiff is "not totally credible."  Defendant asserts that the ALJ's decision is supported by substantial evidence and free of legal error.

**A.      Treating Physician Opinion**

Plaintiff argues that the ALJ improperly rejected the opinion of plaintiff's treating neurologist, Dr. Saadi.  There are several reports from Dr. Saadi in the record, most notably a March 8, 2004 Medical Source Statement in which Dr. Saadi diagnosed plaintiff with "failed back syndrome with intractable radiculitis."  (AR 290.)  Dr. Saadi checked a box stating that plaintiff would be "incapable of even 'low stress' jobs" and found extreme limitations on plaintiff's physical activity, including (1) sit only 20 minutes at a time and only 2 hours total during an 8-hour day; (2) stand only 20 minutes at a time; (3) stand or walk only 2 hours total during an 8-hour day; (4) walk around for 10 minutes every 30 minutes; (5) need to alternate positions at will; (6) need to take unscheduled breaks to lie down; (7) rarely lift 10 pounds; and (8) never twist or stoop.  (AR 290-95.)  Dr. Saadi checked the box indicating that plaintiff's symptoms would "constantly" interfere with the attention and concentration needed to perform even simple work tasks.  (AR 292.)

In contrast, the ALJ found that plaintiff retains the residual functional capacity to perform at least a significant range of light work activity, standing, walking, and sitting up to 6

1  hours each with the usual breaks and lifting and carrying up to 20 pounds occasionally and 10
2  pounds frequently. (AR 21.)  The ALJ based this on medical records and opinions provided by
3  Dr. Saadi as well as other treating physicians Dr. Bui, Dr. Abaci, and Dr. Nchekwbe, in addition
4  to State Agency physicians.  The State Agency physicians provided the minor limitations
5  eventually adopted by the ALJ. (AR 21.)

6  The ALJ noted that the sole medical opinion in the record that the plaintiff would be
7  limited to less than light work activity was the March 8 assessment of Dr. Saadi. (AR 21.)  The
8  ALJ then explained:

> "The undersigned is unable to document sufficient objective signs
> and laboratory findings to justify such extreme limitations for the
> claimant, and in fact, finds them to be significantly contradicted by
> the relatively minor medical examinations near that date.  For
> example, on October 20, 2003, Dr. Abaci had found the claimant's
> gait to be relatively normal, she had no scoliosis, normal lodosis,
> her range of motion was "okay," but she was obese and
> deconditioned....October MRI's had documented a normal cervical
> spine and fairly minor objective findings in her lumbar spine...
> January 31, 2003 straight leg raising tests had been normal, as
> observed by this same Dr. Saadi...and there was no evidence of
> neurological or sensory deficits....Based on these objective medical
> findings, the undersigned rejects the March 8, 2004 assessments
> submitted by Dr. Saadi, including his disability onset date of April
> 2002 (or 5 months prior to when he actually first saw the claimant),
> as being perhaps disproportionately more influenced by the
> claimant's subjective complaints than by actual objective medical
> signs and laboratory findings.  The undersigned therefore accords
> more weight to the State Agency physicians' medical opinions
> detailed above." (AR 22.)

20  Treating and examining physicians, such as Dr. Saadi, have a special role in the
21  adjudication of Social Security cases.  "The opinion of an examining doctor, even if
22  contradicted by another doctor, can only be rejected for specific and legitimate reasons that are
23  supported by substantial evidence in the record."  *Widmark v. Barnhart*, 454 F.3d 1063, 1066
24  (9th Cir. 2006) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  That is the
25  standard applicable to this case, because Dr. Saadi's opinion is contradicted by those of the State
26  Agency physicians.  *See Widmark*, 454 F.3d at 1066-67 (even a brief, conclusory opinion of a
27  state agency reviewing physician suffices to establish a conflict among medical opinions).
28

4

The court concludes that the ALJ gave specific, legitimate reasons for discounting Dr. Saadi's opinion that are based on substantial evidence in the record. First, the ALJ pointed to specific pieces of objective evidence in the record, such as Dr. Abaci's finding that the plaintiff's gait was relatively normal and Dr. Saadi's observation of normal straight leg raising tests, that support the ALJ's specific, legitimate conclusion that the objective evidence does not justify extreme limitations. (AR 22.) Plaintiff contends that there is ample objective evidence to support Dr. Saadi's functional assessment. Plaintiff cites Dr. Saadi's review of a November 2003 MRI where Dr. Saadi concluded that the "disk space is majorly collapsed, with foraminal stenosis," and argues that the ALJ's conclusion that the MRI produced only "minor" findings is baseless.[2] (AR 22, 242.) However, the radiologist explaining the scans did not use the term "majorly collapsed." Instead, the radiologist found minimal problems with the cervical spine and, as for the lumbar spine, found "postoperative change L5-S1 with some marrow edema within the vertebral bodies and probable postop fibrosis at the L5-S1 dorsal nerve rootlet level on the left." (AR 244.) A lumbosacral x-ray conducted at the same time found "narrowed L5-S1 interspace" but "no abnormal motion with lateral flexion and extension." (AR 245.) The ALJ is entitled to review the MRI results himself rather than accepting Dr. Saadi's description of the MRI findings.

Next, the ALJ concluded that Dr. Saadi's opinion may have been overly influenced by plaintiff's subjective complaints. (AR 22.) Plaintiff asserts that there is no evidence that this was so. As discussed more fully below, the court concludes that the ALJ properly discounted plaintiff's credibility as to her subjective complaints. And, although the ALJ does not quote any part of the record to show that Dr. Saadi was overly influenced by subjective complaints, the ALJ is entitled to extrapolate from the character of Dr. Saadi's numerous reports that this was so. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995).

---

[2] The ALJ presumably intended to refer to the November 2003 MRI, because there are no MRI results from October 2003 in the record.

5

Finally, the ALJ decided to accord more weight to the State Agency physicians' opinions which concluded that plaintiff retains the residual functional capacity to perform at least a significant range of light work activity. (AR 22.)  Plaintiff argues that the ALJ erred in relying on the State Agency physician opinion, because that opinion was produced in May 2003 and therefore did not incorporate the findings of the November 2003 MRI.  Defendant responds that the ALJ was entitled to conclude that there were few important changes between the September 2002 and November 2003 MRIs, because in November 2003 Dr. Saadi described plaintiff as "continu[ing] to have the same symptoms as before."  (AR 242.)  The ALJ was within his discretion to conclude that the May 2003 government physician opinion remained relevant evidence.

It would have been reasonable for the ALJ to conclude that there is sufficient objective evidence in the record to support Dr. Saadi's restrictive assessment, but it is not this court's role to re-decide the case.  Because the ALJ gave specific and legitimate reasons for rejecting the March 8, 2004 statement, this court defers to the ALJ's decision to do so.  Accordingly, plaintiff's motion as to this issue is denied and defendant's motion as to this issue is granted.

**B.      Severity of Mental Impairment**

Plaintiff argues that the ALJ erred in concluding that plaintiff's depression was "non-severe."  A severe impairment is one that significantly limits the claimant's ability to do basic work activities.  20 C.F.R. § 404.1520(c), 404.1521.  The ALJ gave the following written analysis about plaintiff's mental impairments:

> The undersigned finds that on November 25, 2003, her treating primary physician Dr. Saadi recommended a psychological evaluation and prescribed Zoloft, without evidence of significant objective signs and laboratory findings of mental problems thereafter.  Although Dr. Saadi later opined that the claimant would be incapable of even low-stress jobs partially due to "reactive depression," the undersigned finds no objective evidence of ongoing symptomatology of a longitudinal nature to support that medical opinion.  On May 3, 2003, the State Agency physicians concluded that based on the objective medical evidence through that date, "there is **no** evidence of **any** psychiatric impairment"....  The undersigned further notes that the claimant's treating psychologist from December 2003 through February 2004, Sema Bayla, Ph.D., did not submit any residual functional capacity/medical source statement in support of the claian'ts disability.  For all these reasons, the undersigned finds that any allegation of a severe mental

impairment will be considered "non-severe" for the purposes of this decision." (AR 19.)

When plaintiff appealed the ALJ's decision to the Appeals Council, she submitted an additional report, from David Devine, Ph.D. Dr. Devine's report and attached Psychiatric Review Technique described plaintiff as suffering from "major depressive disorder, recurrent, severe...generalized anxiety disorder...and chronic pain disorder." (AR 313.) Dr. Devine opined that these problems would cause "significant functional limitations." (AR 314.) In denying plaintiff's request for review, the Appeals Council stated:

> ...[T]he Council does not accord this opinion controlling or significant weight. It is unclear as to whether Dr. Devine is a treating source. He did not indicate when he first saw you or whether you continued to be seen. Also there is no showing that Dr. Devine performed a mental status evaluation or that psychological testing was undertaken.
>
> Additionally, while Dr. Devine opined that you met a listing, that listing was not identified. Moreover, the moderate limitations noted by Dr. Devine are inconsistent with a finding that a listing was met. Furthermore, the assessment was for a month. Thus, even if these limitations were accorded controlling weight, there is no showing that the limitations last a period of 12 continuous months. (AR 9.)

Plaintiff now argues that (1) the ALJ committed legal error in failing to perform the requisite functional assessment prescribed by 20 C.F.R. § 404.1520a, and (2) the ALJ did not base his decision on substantial evidence. As for the first point, the special technique described in § 404.1520a is only required if the claimant has a "medically determinable mental impairment." The State Agency physicians found "no medically determinable psych impairment." (AR 169.) They noted her allegations about her mental symptoms, but 20 C.F.R. § 404.1508 states that a "physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." Thus, the ALJ was not required to perform any further functional assessment.

The next issue is whether the ALJ's and Appeals Council's decisions about the non-severity of plaintiff's alleged mental impairment were based on substantial evidence. Plaintiff points to a variety of statements by her treating and examining physicians that she was suffering from depression derivative of her physical pain. However, the fact that there is some evidence

7

pointing in one direction does not mean that there is not also substantial evidence pointing in the other direction. Both the ALJ and the Appeal Council appear to have based their decisions about plaintiff's depression on substantial evidence in the record. For example, the ALJ notes that plaintiff's treating psychologist did not submit a statement in support of plaintiff's alleged mental disability. (AR 19.) Moreover, the government physicians found no objective evidence of a mental impairment. (AR 19.) Thus, the ALJ cited sufficient evidence to support his conclusion that plaintiff did not carry her burden of proof at this stage of the disability determination. The Appeals Council based its dismissal of Dr. Devine's report on substantial evidence that Dr. Devine was not plaintiff's treating psychologist and had not engaged in thorough, independent psychological testing of plaintiff. (AR 9.) Plaintiff does not dispute the existence of any of the pieces of evidence relied on by the ALJ and the Appeals Council. Accordingly, plaintiff's motion as to this issue is denied and defendant's motion as to this issue is granted.

**C.     Finding that Plaintiff Can Return to Past Work**

Plaintiff argues that the record does not support the ALJ's "facile conclusion" that she can return to her past work. Plaintiff asserts that such a finding is "implausible given the severe pain, which is aggravated with prolonged sitting and standing; her need to alternate positions; the sedative effects of medication; and her onset of depression which prohibits her from performing complex tasks and working at a consistent pace." Defendant responds that the ALJ considered, when assessing plaintiff's RFC, all of the limitations that were shown to exist, and thus he did not err in omitting plaintiff's other alleged limitations, which she had not carried her burden of proving. The ALJ properly established plaintiff's RFC to perform at least a significant range of light work, and then found that the evidence established that she could return to her past relevant work as customer service agent, retail cashier, accountant, and bank teller. (AR 23.) The ALJ found that she could return to that work both as it is generally performed in the national economy and as she actually performed it. (AR 23.) Plaintiff's assertion that the ALJ's conclusions are "implausible" ignores the fact that the ALJ is responsible for determining RFC and is also responsible for "resolving ambiguities." *See* 20

1 C.F.R. § 404.1546(c) and *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). Accordingly, plaintiff's motion as to this issue is denied and defendant's motion as to this issue is granted.

### D. Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ erred in discounting plaintiff's subjective testimony as "less than fully credible when compared to the record as a whole." (AR 23.) Plaintiff presented evidence of an underlying impairment that could reasonably be expected to produce pain and other symptoms. Thus, absent affirmative evidence of malingering, the ALJ could only reject the claimant's testimony about the severity of her symptoms by giving "clear and convincing reasons" for doing so. *Batson v. Commissioner*, 359 F.3d 1190, 1196 (9th Cir. 2004). "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

The ALJ made clear and convincing findings to support his determination that plaintiff's complaints were not fully credible. In addition to citing objective medical findings that undermine plaintiff's subjective testimony, the ALJ noted that "there is evidence that the claimant has been less than fully compliant with recommended medical treatment." (AR 23.) As examples, he cited plaintiff's continued weight gain in the face of recommendations to lose weight, plaintiff's failure to follow-up on Dr. Saadi's advice that she seek physical therapy, and (after plaintiff did begin physical therapy) a therapist's note that "patient has apparently self-limited their therapy care." (AR 23.)

Plaintiff now argues that it was wrong for the ALJ to cite her failure to lose weight. Social Security Ruling 02-1p states that the Social Security Administration will "rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits," and only when certain strict conditions are met. "Failure to follow prescribed treatment" can result in a denial of benefits under 20 C.F.R. § 404.1530. However, the ALJ in this case did not rely on 20 C.F.R. § 404.1530 to deny benefits to the claimant. The ALJ cited the plaintiff's failure to follow recommended treatment for her obesity as just one example among many of times that plaintiff was less than fully compliant with recommended medical treatment. The strict

9

conditions described in S.S.R. 02-1p were therefore not binding on the ALJ in this case. The ALJ's statement of specific reasons for discrediting plaintiff's testimony is sufficient. Accordingly, plaintiff's motion as to this issue is denied and defendant's motion as to this issue is granted.

## IV. ORDER

Based on the foregoing, plaintiff's motion for summary judgment or remand is DENIED; and defendant's cross-motion for summary judgment is GRANTED.

Dated:   2/28/07

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

Notice will be sent to:

Mary Patricia Parnow mary.parnow@ssa.gov

Harvey Peter Sackett hps@hpspc.com, lucyc@sackettlaw.com; julie@sackettlaw.com; juanita@sackettlaw.com

Sara Winslow sara.winslow@usdoj.gov, kathy.terry@usdoj.gov; claire.muller@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.